IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JERRY A. HURST, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) )   Civil Action No. 03-362-KAJ |
| CITY OF REHOBOTH BEACH, et al., | ) ) ) |
|     Defendants. | ) |

**MEMORANDUM ORDER**

**I.   Introduction**

Plaintiff Jerry A. Hurst, who proceeds *pro se*, and who paid his filing fee, filed this civil rights action pursuant to 42 U.S.C. §1983. (*See* Docket Item ["D.I."] 1.) He also invokes 18 U.S.C. § 242, a criminal statute that establishes criminal liability for certain deprivations of civil rights under color of law. Mr. Hurst seeks compensatory and punitive damages, attorney's fees, an award of his costs of suit, and other relief as the Court deems appropriate. Mr. Hurst filed this suit against a large number of defendants, many of whom have been dismissed. The allegations in the complaint are discussed in my March 31, 2005 memorandum opinion. (D.I. 118.)

**I.   Procedural and Factual Background**

Mr. Hurst filed his original complaint on April 9, 2003, and paid the filing fee at that time. (D.I. 1.) The case was stayed pending disposition of a criminal matter, and after the stay was lifted, I ordered the parties to submit a joint proposed scheduling order by August 4, 2004. (D.I. 79.) On August 9, 2004, I held a teleconference with the parties. Motions to dismiss were filed by several parties, and I granted a majority of the motions. (*See* D.I. 118, 119, 130, 131, 132.) To date, the defendants remaining in the

case are the City of Rehoboth Beach, Paul Parson, Jaime Riddle, and Michael Armstrong.

A scheduling teleconference was held on May 31, 2006, and on June 16, 2006, I entered a scheduling order. (D.I. 143.) The scheduling order sets an amendment deadline of June 16, 2006, an expert disclosure deadline of November 5, 2006, and a discovery cutoff date of December 8, 2006. (*Id.*) On June 16, 2006, Mr. Hurst mailed a motion for leave to file an amended complaint, and it was filed on June 19, 2006. (D.I. 146.) Defendants objected to the motion to amend the complaint, and Mr. Hurst replied to their objections. (D.I. 148, 150, 152-155.) In the meantime, the parties filed their initial disclosures. (D.I. 147, 149, 151.)

On July 24, 2006, the City of Rehoboth Beach propounded interrogatories and served a request for production of documents upon Mr. Hurst. (D.I. 156, 157.) Mr. Hurst objected to all the interrogatories, but answered one interrogatory without waiving his objection. (D.I. 158.) He set forth eight common objections to the interrogatories and the request for production of documents. (*Id.*)

Colin M. Shalk, counsel for defendants the City of Rehoboth Beach and Walter Speakman, advised me by letter dated September 14, 2006, of the unresolved discovery dispute. (D.I. 159.) The letter indicated that after receiving Mr. Hurst's responses, Mr. Shalk corresponded with him on August 28, 2006, and addressed what he believed to be the deficiencies in Mr. Hurst's discovery responses. (*Id.*) Because Mr. Hurst did not respond to the letter, Mr. Shalk requested a teleconference with the court, which was set for September 20, 2006. (*Id.*; D.I. 160.)

During the telephone conference held on September 20, 2006, the parties had difficulty hearing one another. I advised the parties that if the telephone connection did not work, then the matter would be recessed, and I would hold an in court hearing. The matter was rescheduled after an unsuccessful attempt to complete the teleconference.

I scheduled the in-person discovery conference for October 18, 2006. (D.I. 162.) Mr. Hurst apparently took exception to my order requiring his appearance in court. He accused Mr. Shalk of misleading the court by indicating that a teleconference was not possible, when Mr. Hurst believed that it was. Mr. Hurst also accused Mr. Shalk of taking advantage of Mr. Hurst's *in forma pauperis* status.[1] Mr. Hurst, who lives in Arlington, Virginia, complained of the "major expense" that traveling to Wilmington would cause him. (D.I. 164, Ex. A at ¶ 4.) He requested that Mr. Shalk agree that Kevin J. Connors, counsel for Paul Parsons, Jaime Riddle, and Michael Armstrong, initiate a telephone conference on the date I set for the in-court hearing. (*Id.*, Ex. A at ¶ 5.)

Mr. Hurst wrote a letter to me about the "impaired" teleconference held on September 20, 2006. (D.I. 166.) He indicated to me that Mr. Shalk's purpose in having an in-court discovery conference was to increase Mr. Hurst's burden and expense of discovery. Mr. Hurst also outlined what he perceived to be discovery violations by

---

[1] Mr. Hurst paid the filing fee when he filed this case on April 9, 2003, and he did not file a motion for leave to proceed *in forma pauperis* until August 31, 2004. (D.I. 92.) The motion was denied as moot, and I discussed in my memorandum opinion that Mr. Hurst had paid the filing fee, had executed summons for each defendant save one, each defendant had been served, and the filing fee was not refundable. (D.I. 118.) Mr. Hurst sought, and was granted leave to proceed *in forma pauperis* in *Hurst v. City of Dover*, 04-83(KAJ), on March 1, 2004 and *Hurst v. Trader*, 06-146(KAJ) on March 16, 2006.

Mr. Shalk, including the following: Mr. Shalk lied when he stated that Mr. Hurst threatened to sue him if he refused to participate in a telephone conference; Mr. Shalk "makes wild claims" that Mr. Hurst maintains a residence in Richmond, Virginia; Mr. Shalk's claim that Mr. Hurst's medical records are not business records; Mr. Shalk lied when he claimed that discovery did not related to Mr. Speakman; Mr. Shalk filed an excessive number of interrogatories in violation of the Federal Rules of Civil Procedure; and, contrary to Mr. Shalk's assertions, Mr. Hurst timely objected to the requests for production of documents. (*Id.*)

On October 5, 2006, Mr. Hurst filed his disclosure of expert testimony, stating he had not retained an expert, but that he reserved the right to do so. (D.I. 163.) In response, the City of Rehoboth Beach moved for an extension of time to disclose expert testimony on the bases that Mr. Hurst's disclosure of expert testimony provided no useful information, and that Mr. Hurst had refused to answer discovery propounded to him. (D.I. 165.)

I held a discovery hearing in open court on October 18, 2006. (D.I. 172.) The hearing was delayed due to Mr. Hurst's late arrival, due to car trouble. (*Id.* at 2.) At the beginning of the hearing I advised the parties that they must not do things that slow down the orderly administration of justice. (*Id.* at 3.) I also admonished the parties to behave appropriately. (*Id.*)

I then attempted to address Mr. Hurst's eight general objections to the interrogatories. I agreed that objections one and two were well-founded insofar as they objected to the number of interrogatories propounded (*id.* at 4), and I directed Mr. Shalk to choose fifty interrogatories he wished to have Mr. Hurst answer. (*Id.*)

I overruled, as unsound, Mr. Hurst's objection that the discovery was directed to the complaint instead of the amended complaint, and I directed Mr. Hurst to answer discovery as it relates to the complaint. (*Id.*) I discussed Mr. Hurst's deadline of October 5, 2006, to retain experts, and I noted that he had not retained experts by the deadline. (*Id.* at 5.) I ruled that Mr. Hurst has no unilateral right to change the scheduling order by the late retention of an expert. (*Id.*) He failed to meet the deadline and gave no satisfactory reason for that failure. (*Id.*) Therefore, no experts will appear for the plaintiff.

Before hearing argument on other objections to the interrogatories, I required Mr. Shalk to indicate which interrogatories he wanted Mr. Hurst to answer. Mr. Shalk indicated that he wanted answers to interrogatories Nos. 1, 2, 3, 4, 5, 6, 7, and 8, No. 9 for the years 2000 and 2001, and Nos. 10, 11, 12, and 13. (*Id.* at 7.) These interrogatories are directed towards damages. I asked Mr. Hurst why he had objected to the interrogatories relating to damages, and he relied upon his eight standing objections to the interrogatories as to each and every interrogatory. During the hearing I attempted to go through the eight objections as to each interrogatory, but, due to time constraints, exacerbated by Mr. Hurst's late arrival, was only able to address the objections as to interrogatories Nos. 1 through 6 and No. 9.

Objection 3(a) states that the interrogatories are "wholly ambiguous and vague by concealing which complaint ... the interrogatories pertain to" since the amended complaint superseded the original complaint.[2] (D.I. 158.) Objection three also states

---

[2] I have not ruled on the motion for leave to file an amended complaint (D.I. 146), and at this time the case proceeds on the original complaint. Even if that were not the

that the interrogatories are "irrelevant, overly broad, incoherent and/or incomprehensible." (*Id.*) We discussed Interrogatory No. 1, and I denied objection 3(a) and directed Mr. Hurst to answer the interrogatory. (D.I. 172 at 11-14.)

Objection 3(b) states that Rule 26(d) requires the parties to confer about disclosures and the subsequent course of discovery prior to any discovery. (D.I. 158.) I advised the parties that the operative pleading, until I ruled otherwise, is the original complaint, but that did not mean that things not specifically alleged in the complaint may not be relevant. (D.I. 172 at 15-16.) I ruled that the issue of whether the case would proceed on the complaint or the amended complaint would not hold up discovery relevant in any event. (*Id.* at 16.)

Objection four states that the words "alleged incidents of April 2001" are vague, overly broad and incomprehensible. (D.I. 158.) After hearing from Mr. Shalk, it was agreed that "incidents of April 2001" referred to a series of incidents between April 5 and April 9, 2001. (D.I. 172 at 18-19.) Mr. Hurst indicated he would be happy to answer Interrogatory No. 1 based upon that time frame. (*Id.* at 19.)

Objection five states that the interrogatories call for information protected by federal and state law and regulations such as the Health Insurance Portability and Accountability Act (HIPPA), 45 C.F.R. § 160 and § 164, as well as Rules of Evidence 502, 503, 508, 509, and 511. (D.I. 158.) Mr. Hurst argued as to Interrogatory No. 1, that, because he is *pro se* and an attorney licensed in California, questions about his injuries wrongly require him to divulge information he has worked on with experts that

---

case, however, the generalized damages discovery would remain relevant and must be answered.

6

he may have consulted, but who will not testify at trial. (*Id.* at 20.) In short, he seeks to invoke a sort of work product protection to cloak factual information about his alleged injuries. I ruled that the work product doctrine and the attorney-client privilege do not permit someone to shield factual information. (*Id.* at 21.) Mr. Hurst agreed to answer Interrogatory No. 1 as to the facts he knows. (*Id.*) Mr. Hurst stated that the facts "eventually certainly will be provided," and I explained to Mr. Hurst that he is duty bound to provide now, not later, the facts and discovery regarding information he wants to rely on at trial. (*Id.* at 22.) I advised Mr. Hurst that he is not entitled to invoke the attorney-client privilege or the work product doctrine with respect to Interrogatory No. 1. (*Id.* at 23-24.) I also ruled that neither HIPPA nor any of the other privileges Mr. Hurst asserted stood in the way of his answering Interrogatory No. 1. (*Id.* at 26.)

Objection 6 states that the interrogatories request trial preparation materials, work product, and mental impressions from plaintiff, who proceeds *pro se.* (D.I. 58.) Objection six also states that the interrogatories call for answers consisting of "pure law" rather than "to fact or application of law to fact." (*Id.*) I reiterated to Mr. Hurst that I had ruled on this issue. (D.I. 172 at 29.) Mr. Hurst persisted and asked for time to file a "points and authorities brief," and I denied the request. (*Id.* at 30.) I also ruled Interrogatory No. 1 is purely a question of fact, not a question of law, and reiterated to Mr. Hurst that he must answer it. (*Id.* at 31-32.)

Objection seven states that Mr. Hurst has *in forma pauperis* status in a related case, and that the interrogatories are designed to take unfair advantage of his financial circumstances, aggravated by the court's denial of his motion for leave to proceed *in forma pauperis.* (D.I. 58.) Mr. Hurst also argued that to ask what his injuries were

during the entire month of April 2001 is oppressive and abusive. (*Id.*; D.I. 172 at 33-34.) I again expressed to Mr. Hurst that is it not burdensome for him, while under oath, to answer an interrogatory in response to a question, "tell us how you are injured, what is your injury." (*Id.* at 35.) I warned Mr. Hurst that he is to provide fully responsive answers to the interrogatories, and ruled that his objections to Interrogatory No. 1 were frivolous. (*Id.* at 36-37.) I also cautioned Mr. Hurst not to distinguish between the complaint or the amended complaint, and to reveal anything that he asserts the defendants are responsible for having done to him in April 2001 that caused him injury. (*Id.* at 38.)

Objection eight states that the amended complaint requests bifurcation of the case as related to *Heck v. Humphrey*, 512 U.S. 4377 (1994). (D.I. 158.) I overruled the objection on the basis that it is not a valid objection to interrogatories. (D.I. 172 at 44-45.)

Discussion was had regarding where Mr. Hurst resides. Mr. Shalk apologized for his error in stating that Mr. Hurst resided in Richmond, Virginia, rather than accurately saying the residence is in Arlington, Virginia. (*Id.* at 39-40.) Additionally, I briefly discussed Mr. Hurst's position that records requested by Mr. Shalk in the request for production of documents are business records, but I made no ruling on the issue. (*Id.* at 41-43.)

Interrogatory No. 2 asks Mr. Hurst, as to the alleged incidents of April 2001, to provide the names and addresses of all treating providers and the dates of treatment. (D.I. 158.) Mr. Hurst objected, stating that he does not have to provide the information, because it asks for information received from nontestifying experts consulted in

anticipation of litigation. (*Id.* at 45.) I overruled the objection. (*Id.*) I also overruled the objections to Interrogatories Nos. 3 and 4. (*Id.* at 46.)

Interrogatory No. 5 asks, "[f]or the ten (10) year period before April, 2001, identify by name and address all medical, emotional or mental health providers who treated you for any condition. (D.I. 158.) During the hearing Mr. Hurst objected to Interrogatory No. 5 on the basis that the ten year time period is irrelevant. (D.I. 172 at 46.) After listening to Mr. Hurst's lengthy explanation (D.I. 172 at 46-58), I determined that there is a foundation for inquiring into his mental health. (*Id.* at 58.) Further, after Mr. Hurst indicated that he had no mental health issues, I overruled his objection to the interrogatory and ordered that he answer it for the ten year period requested. (*Id.* at 60.) I also ordered Mr. Hurst to answer that part of the Interrogatory asking for medical conditions, but only going back five years. (*Id.* at 62.)

I ordered Mr. Hurst to answer Interrogatory No. 6 in full. (*Id.*) Interrogatory No. 6 asks "[f]or the medical expenses identified at page 8, number 1 of the Plaintiff's initial disclosures identify each expense, the date of treatment, the person or entity providing the treatment and the purpose of each treatment." (D.I. 158.) I also directed Mr. Hurst to answer Interrogatory No. 9, which asks for gross and net income, but limited to the years 2000 and 2001. (D.I. 172 at 64.)

At the end of the more than hour-and-a-half hearing, I admonished the parties to cooperate on discovery and warned them that, if it was necessary to hold another such conference, sanctions would ensue. (*Id.*) I reiterated that the vast majority of the objections raised by Mr. Hurst were frivolous, not valid, not sound, and not appropriate objections. (*Id.* at 65.) I also advised the parties to review the *Poulis* case, which

discusses discovery sanctions. (*Id.* at 66.) Finally, I counseled the parties to utilize the court's dispute resolution mechanism, and if that is unsuccessful, the parties will meet in court, and I will address the issue of sanctions. (*Id.* at 66-67.) Mr. Hurst responded by telling me he considered the foregoing "a muzzling of this plaintiff," and that the "court had attempted that by denying *in forma pauperis* status in this." (*Id.* at 67.) At that point I stopped the hearing because of other pending court business, and Mr. Hurst asked if he was ordered to answer the rest of the "unchanged discovery." (*Id.*) I indicated that Mr. Hurst was to engage in sensible and appropriate discovery meet-and-confer procedures. (*Id.* at 68.)

On October 20, 2006, I entered an order based upon my rulings during the discovery hearing for Mr. Hurst to fully respond to Interrogatories 1-6 and Interrogatory 9, with the exception that the response to Interrogatory 5 may be limited to providing medical information for a 5-year period and providing mental health information for a 10- year period, and with the further exception that the response to Interrogatory 9 may be limited to the years 2000-2001. (D.I. 168.) I further ordered that Mr. Hurst must confer in good faith with counsel for the defendants with respect to the remainder of the pending discovery requests in an effort to resolve disputes and provide appropriate responses. (*Id.*)

### III.    Motion to Alter or Amend

On October 30, 2006, Mr. Hurst filed a motion to alter or amend pursuant to Fed. R. Civ. P. 59(e). (D.I. 170.) Mr. Hurst requests that I "augment" my October 20, 2006 order to correct clear errors of law or fact and to prevent manifest injustice. (*Id.*) Mr. Shalk advised me by a letter dated October 31, 2006, that, as of the date of his

letter, he had not received responses to the discovery requests. (D.I. 171.) Mr. Hurst responded to Mr. Shalk's letter by drawing my attention to decisions by the United States Court of Appeals for the Ninth Circuit, and the "urgent need for timely rulings on the legal issues raised" by Mr. Hurst in his "timely filed objections." (D.I. 173.)

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986). A motion for reconsideration may be granted if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999).

A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made. *Glendon Energy Co. v. Borough of Glendon,* 836 F. Supp. 1109, 1122 (E.D. Pa.1993). Motions for reargument or reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del.1990) (citation omitted). Reargument, however, may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Brambles USA*, 735 F. Supp. at 1241 (D. Del. 1990) (citations omitted).

Mr. Hurst contends that order requiring him to appear in person for a routine discovery dispute was "entirely punitive". (D.I. 170 at 1.) He argues that the trip was

costly and dangerous, and that cost is a major factor, since he has been granted *in forma pauperis* in other cases. (*Id.* at 2.) Mr. Hurst argues incorrectly and inappropriately that I threatened and intimidated him throughout an hour-and-a-half "harangue." (*Id.*)

Allowing Mr. Hurst to proceed *in forma pauperis* in other cases in this district has no bearing in this case. Moreover, his perception that *in forma pauperis* status must necessarily reduce his discovery costs is unfounded. *Pro se* litigants may use any of the discovery methods prescribed in the Federal Rules of Civil Procedure. In turn, a *pro se* plaintiff is obligated to engage in good faith in responding to discovery. Litigation is not the one way street Mr. Hurst seems to think it is.

Moreover, contrary to Mr. Hurst's assertions, a review of the hearing transcript reveals that I neither threatened nor intimated him, but that, instead, I was more than accommodating. I allowed Mr. Hurst, at length, to voice his objections and present his argument of the issues, despite the manifest inadequacy and frequent frivolousness of these arguments. There is no clear error of law or fact. Rather, Mr. Hurst disagrees with my rulings. He is entitled to his opinion, but disagreement with my rulings is not sufficient to amend or alter the October 20, 2006 order.

The motion for reconsideration to alter or amend (D.I. 170) must be, and is denied. If Mr. Hurst has not already done so, he shall comply with my October 20, 2006, order within twenty days of the date of this order. The parties are ordered to engage in a good faith effort to resolve the discovery dispute over the remaining interrogatories and the request for production of documents, and are to report to me, again within thirty days from the date of this order, the outcome of their efforts to

resolve any outstanding discovery disputes. No motions for extension of time will be granted, except for truly extraordinary and unforeseen circumstances.

If the parties confer and are unable to agree to a reasonable and prompt resolution to any pending discovery (i.e., remaining interrogatories and production of documents), I will resolve outstanding discovery issues upon the filing of appropriate motions.

## IV. CONCLUSION

Based upon the foregoing analysis, IT IS HEREBY ORDERED that

1. The motion to alter or amend (D.I. 170) is DENIED. Mr. Hurst shall comply with my October 20, 2006, order within twenty days of the date of this order.

2. The parties are ordered to engage in a good faith effort to resolve the discovery dispute over the remaining interrogatories and the request for production of documents, and shall report to me, within thirty days from the date of this order, the outcome of their efforts to resolve any outstanding discovery disputes.

3. Failure to timely comply with this order may result in the imposition of discovery sanctions.

UNITED STATES DISTRICT JUDGE

November 21, 2006
Wilmington, Delaware